Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

AARON WATSON,

*Defendant*.

Crim. No. 19-734

**OPINION**

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court by way of Defendant Aaron Watson's motion to modify his sentence and for immediate compassionate release. D.E. 32. The Government filed opposition. D.E. 218. The Court reviewed the parties' submissions[1] and considered the motion without oral argument pursuant to Local Criminal Rule 1.1 and Local Civil Rule 78.1(b). Defendant seeks immediate release due to the ongoing COVID-19 pandemic. For the following reasons, Defendant's motion is denied.

**I.     BACKGROUND**

   **A. Underlying Criminal Proceedings**

Defendant was arrested and charged in connection with a large-scale drug trafficking organization in Newark, New Jersey. Defendant sold crack cocaine, and sometimes heroin, to a confidential source on six separate occasions between November 28, 2018 and June 12, 2019. On

---

[1] Defendant's brief in support of his motion is referred to as "Br." (D.E. 217), and the Government's opposition brief is referred to as "Opp." (D.E. 218).

October 9, 2019, Defendant pled guilty to an Information that charged him with possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841. Pursuant to a written plea agreement, Watson stipulated that a sentence of five years' imprisonment was reasonable. On September 15, 2020, the Court sentenced Watson to the stipulated term, although his United States Sentencing Guidelines range was much higher.

Watson is currently housed at Danbury FCI in Connecticut. He is scheduled to be released on September 20, 2022.

### B. COVID-19 Pandemic

COVID-19 "is caused by the virus severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), a new virus in humans causing respiratory illness which can be spread from person-to-person." *COVID-19*, "COVID-19 Overview and Infection Prevention and Control Priorities in non-US Healthcare Settings," Centers for Disease Control and Prevention (Feb. 26, 2021), https://www.cdc.gov/coronavirus/2019-ncov/hcp/non-us-settings/overview/index.html#background. "COVID-19 is primarily transmitted from person-to-person through respiratory droplets. These droplets are released when someone with COVID-19 sneezes, coughs, or talks." *Id.* Persons who contract the virus reflect a wide range of symptoms from asymptomatic to mild (including fever, cough, nausea, chest pain, and body pain) to severe to critical (including respiratory failure and death). *Id.* As a result, standard precautions to prevent the spread of the virus include social distancing, proper hygiene, personal protective equipment (including use of a face masks), and maintenance of clean surfaces and devices. *Id.*

Numerous factors can increase a person's risk of severe illness if he/she contracts the virus. As a person get older, his/her risk for severe illness from COVID-19 increases. *COVID-19*, "Older Adults," Centers for Disease Control and Prevention (May 14, 2021),

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. For example, persons in their sixties and seventies are at a higher risk than people in their fifties. *Id.* Those 85 or older are at greatest risk. *Id.* Adults 65 or older comprise 8 out of 10 COVID-19 deaths in the United States. *Id.* The following medical conditions put a person at increased risk of severe illness from COVID-19: cancer, chronic kidney diseases, chronic lung diseases (including asthma if it is moderate to severe), dementia or other neurological conditions, heart conditions such as coronary artery disease, weakened immune system from organ transplant, obesity, pregnancy, sickle cell disease, smoking, stroke or cerebrovascular disease, and type 2 diabetes mellitus. *COVID-19*, "People with Certain Medical Conditions," Centers for Disease Control and Prevention (May 13, 2021),[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

As of May 28, 2021, the United States has had 33,018,965 COVID-19 cases, resulting in 589,547 deaths. *COVID Data Tracker*, Centers for Disease Control and Prevention, https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last visited May 28, 2021).

### C. Federal Bureau of Prisons

The Federal Bureau of Prisons ("BOP") has taken the following steps to combat the virus. On March 13, 2020, the BOP modified its operations in accordance with its "COVID-19 Action Plan." *Federal Bureau of Prisons COVID-19 Action Plan*, Federal Bureau of Prisons (Mar. 13, 2020), https://www.bop.gov/resources/news/20200313_covid-19.jsp. Initially, all social visits, inmate movement, and official staff travel were suspended for thirty days. *Id.* Contractors who

---

[2] The CDC previously provided two separate lists, one listing conditions that entailed a greater risk of severe illness and one setting forth conditions that might involve a greater risk.

3

enter any BOP facility are screened for the virus and, initially, admission was limited to contractors who performed essential services. *Id.* The BOP also conducts enhanced health screenings for staff in areas of "sustained community transmission." *Id.* The BOP screens all new inmates for virus "exposure risk factors and symptoms." *Id.* Any new inmate who is asymptomatic but has had a risk of exposure is quarantined. *Id.* According to the Government, the quarantine period is for a minimum of 14 days or until cleared by medical staff. Opp. at 4. The Government indicates that new inmates who are symptomatic are placed in isolation until they test negative for the virus or are cleared by medical staff. *Id.* at 5. The Government also states that the BOP has taken the following steps to prevent the spread of the virus: group gatherings are limited to permit social distancing as much as possible, all staff and inmates have been issued face masks, and all staff and inmates are strongly encouraged to wear face masks when social distancing cannot be achieved. *Id.*

The BOP also has a COVID-19 vaccination plan. *COVID-19 Vaccine Guidance*, Federal Bureau of Prisons Clinical Guidance (Mar. 11, 2021), https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf. Inmates fall into different priority levels for vaccination: Priority Level 1 (for inmates in certain high priority jobs, including health service unit assignments); Priority Level 2 (inmates who are 65 or older or who are, according to CDC criteria, at an increased risk for severe illness from the virus); Priority Level 3 (inmates who are aged 50 through 64 or who might be, according to CDC criteria, at an increased risk for severe illness from the virus); and Priority Level 4 (all other inmates). *Id.* As of May 28, 2021, the BOP had administered 184,201 doses of vaccine. *COVID-19*, "Vaccine Implementation," Federal Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited May 28, 2021).

The current BOP COVID-19 statistics are as follows: (1) 59 inmates and 130 staff have confirmed positive tests; (2) 45,451 inmates and 6,834 staff have recovered; and (3) 237 inmates and 4 staff have died. *Id.* Danbury FCI, where Defendant is housed, currently reports no positive cases among inmates or staff. *Id.* In addition, 159 inmates and 83 staff have recovered, and one inmate has died.

### D. The Parties' Position

Watson's brief consists of quotations from a United States Senator and the House of Representative's Judiciary Committee; the quotes concern COVID-19 and the BOP. Br. at 2. His submission also includes a November 24, 2020 letter from the warden of Danbury FCI. *Id.* at 3-4. The letter denied Watson's request for release due to COVID-19. The warden indicates that (1) Watson has hypothyroidism that is being treated with medication; (2) Watson has not been diagnosed with an irregular heart rate or hypertension; (3) Watson has a body mass index of 29.3; and (4) Watson had tested negative twice for the virus. *Id.*

The Government opposes the motion, asserting that Watson has only indicated that he should be released due to COVID-19 without providing any indication that he is particularly vulnerable. Opp. at 9-10. The Government adds that the factors in 18 U.S.C. § 3553(a) also countenance against release.

## II. LEGAL STANDARD

Following the passage of the First Step Act, Section 3582(c)(1)(A) now reads as follows:

(c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a

motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable*, if it finds that—

>(i) *extraordinary and compelling reasons warrant such a reduction*; or

>(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and *a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)*;

>*and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*; and

(B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

(2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphases added). The parties agree that Defendant has satisfied the statutory exhaustion requirement.

The applicable policy statement of the United States Sentencing Commission is found in Section 1B1.13. U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). The application notes to the section provide 4 circumstances that can be considered extraordinary and compelling: (1) the medical condition of the defendant, (2) the age of the defendant, (3) family circumstances, and (4) other circumstances constituting an extraordinary or compelling reason,

either considered alone or in combination with any of the other three stated reasons. *Id.* cmt. n. 1(A)-(D). Certain courts have determined that the policy statement is not binding on courts in connection with motions like the one at bar but have nevertheless found that the statement provides useful guidance. *United States v. Viteri*, Crim. No. 19-00044, 2020 WL 3396804, at *3 (D.N.J. June 19, 2020).

In the application note, the fourth consideration requires a determination by the Director of the BOP. *Id.* cmt. n. 1(D). Here, the Government does not contest that the policy statement should also apply when the motion is filed by a defendant, in addition to a motion filed by the BOP Director. The Court agrees. *See, e.g.*, *United States v. Rodriguez*, 451 F. Supp. 3d 392 (E.D. Pa. 2020).

Pursuant to Section 3582(c)(1)(A), the Court must also consider the relevant factors listed in 18 U.S.C. § 3553(a). They include the nature and circumstances of Defendant's offense, the history and characteristics of Defendant, the need for the sentence to provide just punishment, and the need to protect the public from future offenses by Defendant. *Id.*

### III. ANALYSIS

Turning first to Watson's arguments concerning the pandemic, the Court finds that Defendant has not met his burden as to extraordinary and compelling circumstances. The Court agrees with the Government that Watson relies on COVID-19 in general and fails to point to any specific conditions that make him vulnerable. Generalized concerns about the risks from COVID-19, however, do not justify release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Moreover, Danbury FCI currently has no COVID-19 infections, and the BOP is implementing its vaccination program.

The Court also agrees with the Government that the Section 3553(a) factors militate against release. Watson points to no new information that would change the Court's analysis when Watson was sentenced less than two years ago. In addition to the seriousness of the current offense, Watson had a substantial criminal history. As a result, the Court adopts its prior analysis here.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion. An appropriate Order accompanies this Opinion.

Dated: May 28, 2021

                                              John Michael Vazquez, U.S.D.J.